# EXHIBIT A

From: **Robert Richards** rbto.richards@gmail.com 🚩
Subject: FORMAL NOTICE OF VARIOUS CHANGES TO AGREEMENTS, ETC.
Date: July 31, 2017 at 7:29 PM
To: Joe Firmage joe@manyone.org, **Charles Dickens** ysc.watchdog@gmail.com, **Dave Shaw** dshaw@kmclaw.com
Cc: Ken Wilber ken@kenwilber.com, Colin Bigelow colin@kenwilber.com

**FORMAL NOTICE OF VARIOUS CHANGES TO AGREEMENTS, ETC.**

Date:     **July 31st 2017**

To:       **Joseph P. Frimage**
          **David Shaw**
          **Charles L. Dickens**

From:     **Ken Wilber**
          **Bob Richards**
          **Colin Bigelow**


**LEGEND**

JPF = Joseph P. Firmage
Company = ManyOne, Motion Physics, and/or InterNASA, etc.
KW = Ken Wilber
BR = Bob Richards
CB = Colin Bigelow (as Individual and as President of Integral Institute)

### 1. MERGERS OF INTERESTS AND AGREEMENTS

As verbally communicated to JPF,  KW and BR began to merge their individual interests in July 2016. Initially this merger was limited to Merchant Accounts Rights. In December 2016 this was extended to Intellectual Properties and all other Rights pertaining to Security in order to meet KW's Revised Agreement Security requirements that had not been addressed by the Company.

**As of July 31st 2017, all KW and BR Agreements are jointly held and equally shared.**

### 2. SENIORITY

In October 2016, KW and BR informally agreed to receive 20% of the first $2m raised from any and all sources and any and all financial instruments and agreements, and 28% of the next $3m. This was an 'informal' reduction from their joint legal Seniority Rights' entitlements to 50% of all in-bound funds, and this reduction was made in good faith and good will such that all creditor parties would have access to in-bound funds. They also agreed to not email formal monthly invoices and/or Notices to the Company's Officers because of the disruption this had caused in early October 2016.

It was stipulated at the time that
a) the good faith reduction from 50% to 20% was projected to be en force until the end of December 2016,
b) the good faith reduction from 50% to 20% of in-bound monies entitlement was not a formal waiver of Seniority Rights and their entitlements but was a good faith, informal side agreement to 'make peace' and entailed not making legal demands via formal Notices and/or formal Invoices and thereby creating disruptions
c) the agreement to not Invoice or not give Notice or Demand was not a waiver of any Rights and their terms, provisions and entitlements, and
d) the Company and its Officers were and are always required to meet the terms and provisions of Seniority in order to avoid penalties.

Subsequent to #3, KW, BR and CB were instrumental in actioning KW's Convertible Promissory Note on November 1st 2016 that brought Terry Patten (among others) to the table with funds. Because of their close relationship with Terry Patten, BR, KW, and CB did not action nor enforce the 20% rule with respect to Terry's personal monies, even though the Company and its Officers were always formally required to adhere to the terms, provisions and entitlements of the Agreements en force.

KW, BR and CB have recently learned that funds have been in-bound to the Company since November 1st 2016 that were procured from Parties other than Terry Patten and his associates or group, and as recently as this July 2017. The existence or amounts of these funds have not been directly communicated to KW, BR, and CB, nor have KW, BR and CB received any monies from these in-bound funds. (20% of monies? Not. 5%? Not. Zero? <u>Yes, Zero.</u>)

To put it bluntly: "Joe Firmage has royally breached, pissed and shit all over our 20% agreement, friendships, good faith and good will."

Because the extraordinary good faith and good will of KW, BR and CB have not been honored or reciprocated, as of July 31st 2017, KW and BR no longer agree to the 20%/28% rule.

Therefore, starting today, KW and BR require:

a) KW and BR (and CB) are to receive no less than 28% of the next $3m (cumulative) of in-bound monies raised using any and all financial instruments and any kind of agreement, and 20% of the following $2m (cumulative), (i.e., 28% of $3m regardless of the number of in-bound transactions; 20% of $2m regardless of the number of in-bound transactions),

b) payment of these monies owed to KW and BR (and CB) is made within one business day of receipt of any in-bound funds made to the Company and/or any of its banking entities and/or proxies and/or Individuals,

c) accounting transparency including accounting of all in-bound monies and their disbursements,

d) current accounting to be provided to KW, BR and CB no less than monthly,

e) the Company's strict adherence to KW/BR's full Seniority Rights if the Company wishes to avoid further penalties of the sort that have been steadily accumulating since the relevant Agreements covering Seniority Rights were signed, and

f) the accounting for July 2017 is to be emailed to KW, BR and CB no later than August 15th 2017 including the details of all disbursements of the $50k received from Alex Hawkinson, and

g) an Officer or Senior Executive be appointed to oversee compliance with all the above.

Furthermore, when KW, BR and CB have received a total of $840k ($840k is 28% of $3m), then at this point and not before, KW, BR and CB will be willing to discuss modifications or revisions to standing Agreements they have with the Company and JPF.

This $840k as 'magic number' may be increased at any time at the sole discretion of KW, BR and CB if payments are slow in coming and/or if the above stipulations are breached. The Company's go-forward, honest, and transparent compliance with the 28%/20% rule set, adherence to accounting requirements, and size and frequency of payments will be key to the mood, spirit and outcomes of any discussions regarding Agreements modifications, revisions, and/or the categorization and quantification of KW/BR's All Monies Owed into new contracts (new Agreements). In brief, the Company's track record from this point forward is key.

3. MERCHANT ACCOUNTS RIGHTS

On July 7th 2016, BR declined to take on the management of Merchant Account Rights and these Rights were offered to the Company for an agreed-upon, heavily discounted price of $500k. This discounted price was set as such in order to get immediate monies to KW and BR (and Dave Shaw and others). The Company's Officers failed to buy these Merchant Account Rights and failed to sell them to a third party. These Rights encompass all merchant account activity for the 'mothership' as well as 'fractals.'

As recently as May, 2017 Charles L. Dickens (CLD) was confused about the status of these Rights, stating that the low performance of his sales group was due to the lack of merchant account sales charge ability that was BR's responsibility to activate and manage. BR and KW suggest that CLD read all relevant emails of May, June, July and August 2017 pertaining to Merchant Accounts Rights.

As a side note, CLD told the same story to Bruce Lewis (BL) in winter 2017. BR clarified the back story and state of affairs of these Rights in emails to BL in February 2017.

All terms regarding these Rights that were mutually agreed by all Parties throughout the summer of 2016 were terminated on November 7th 2016 upon the failure of the purchase of these Rights within the four-month window beginning July 7th 2016.

Thus any new terms including licensing fees and/or purchasing price will have to be renegotiated.

For the umpteenth time, any activation of these Rights by the Company or its Officers without prior written approval by BR/KW including prior agreed-upon compensation such as license fees will be deemed to be a serious breach of KW/BR's Agreements.



4.  **INTEGRAL CLOUD**

The Integral Cloud was purchased two years ago in August 2015 for expanding the product offerings, customer base, and revenues of the Integral Institute.

**What's its status? <u>When is Integral Institute going to be able to launch what it paid for 2 years ago?</u>**

5.  **TYPO CORRECTIONS TO KW'S REVISED AGREEMENT**

These two typos were caught after the Revised Agreement was signed on September 20th 2016. They are reference errors that resulted from paragraphs being re-numbered but several references in this particular paragraph were not re-numbered.

1.  Page 4, Paragraph d, Line 9: "3.1.c" becomes "4.4.c"
2.  Page 4, Paragraph d, Line 15: "1.3.c" becomes "4.4.d" or more accurately "…and/or by all rules set by this 4.4.d."